We will hear argument next today in Case 13-1339, Spokeo v. Robins. Mr. Pincus. Pincus, Thank you, Mr. Chief Justice, and may it please the Court. This Court has said that the irreducible constitutional minimum for standing is injury in fact, that the plaintiff suffered actual or imminent tangible harm. In Lujan, the Court said that Congress may elevate to the status of legally cognizable injuries concrete de facto injuries that were previously inadequate in law. Here, the Ninth Circuit held that there is no need for any de facto injury. A statutory violation that in some general sense relates to the plaintiff is all that's necessary, even though it has no tangible consequences.  Kagan. Kagan. Mr. Pincus, let's say I agree with you that there needs to be a concrete injury. That Congress needs to have recognized something that looks like a concrete injury. But why isn't that exactly what Congress did here? So let me just frame it in a hypothetical. Suppose that there's just a statute. It's a little bit of a simpler statute, and you can argue with me or tell me why it might or might not be different, but I just want to understand your position. Suppose that there's a statute that just says that one of these credit reporting agencies shall not disseminate inaccurate information about people, or shall not do it willfully or negligently or what have you, but shall not disseminate inaccurate information about people. And then there's a cause of action that says if they disseminate inaccurate information in a credit report about you, you can sue. All right? Is that enough of a concrete injury for you? Pincus. No, it's not, for three reasons, Your Honor. And let me preface my response by saying that, of course, that isn't the case with respect to three of the claims in this case, which don't have anything to do with inaccuracy. Okay. But let me just focus on what seems to be the bravament of the claim. And why isn't the dissemination of false information about you in a credit report why isn't that, why isn't it perfectly sufficient if Congress says that's a concrete injury? Well, I guess as a threshold matter, I think what the Court has said in other contexts is that Congress should clearly say that it is going beyond the tangible injuries that this Court has defined. The Court has had a clear statement rule. And so another difference between your hypothetical, I'm not sure whether your hypothetical, as Congress clearly saying, and by the way, we are creating a cause of action for people who otherwise couldn't get into court. I'm sorry. Let me start. Maybe I can answer your question this way. You said that there were reasons why that was not a concrete injury. Yes. The dissemination of false information about a particular person. Why? Because to me, I'll just say, seems like a concrete injury to me. Well, first of all. I mean, if somebody did it to me, I'd feel harmed. And I think that if you went out on the street and you did a survey, most people would feel harmed. Most people would feel as though they had some interests that had been invaded. And Congress recognized that, thought it was a significant problem, passed a statute to deal with that problem. First of all, the common law tradition, which the Court has looked to, did not say that the dissemination of any false statement was an injury. To prove defamation, the Court said that the dissemination of any false statement was an injury. That's quite right. It's not completely in the common law tradition, but we've said many times that Congress gets to look beyond the common law tradition and gets to identify real world problems out there in the world, harming people in real world ways. And that, it seems, is what Congress did here. Well, let me answer your question in two ways. I want to explain why it isn't, and then I also want to explain why it's not what Congress did here. So why it isn't, there are places that the Court has looked for guides. One is the common law. Other kinds of torts, for example, in the restatement of the common law versus the legislature. So if we have some historic practice where damages are awarded to someone who has no out-of-pocket loss, if the common law says so, it's okay. But if Congress says so, it's not. It's very strange. I don't think so, Your Honor. I think this question takes me a little afield from Justice Kagan's question. But I think the common law had some very specific areas where it defined actual harm. For example, any intrusion on a property right is actual harm, but there has to be a property right for that to be so. So I think Congress could create a property right, and if it did that that's what it would do. Sotomayor, you're saying, contrary to one citation, you're actually, as by versus why, that it isn't a right that Congress has given you? I mean, I think most of the common law rights, like property rights, are given by Congress and are given to you by statute. They're not given to you by the common law. Most people are coming in to sue on the basis of a statute. And the question is that there are several ways that they can establish standing. One is to have the tangible harm to meet the general tangible harm test that this Court applies generally in a standing context. And that can be economic injury. It can be other kinds of injury. And the Court has applied that in a wide variety of contexts. The Court has also the – it is also clear that in the property rights context, when Congress just doesn't create or the common law doesn't just create a right to sue but confers a property right, the right to exclude generally, as the Court has put it, that any intrusion on that property right, on that right to exclude, is tangible harm. And the Court has made clear in the College of Justice that it's not a tangible harm in the property rights where we didn't require economic harm. Those would mean nothing to you. Feigin. Your Honor, I – Those legal rights, we just decided through the centuries all those cases wrong. Well, I don't think there certainly are any cases that my friends cite that meet that test. It's not just economic harm. It can be psychic harm. There are other – it can be discrimination. It's the answer to Justice Kagan's question. Okay, I – You said it could be psychic harm, there could be economic harm, there could be all kinds of harm, and that being so, why isn't what she said right? That one kind of harm could be the harm suffered when somebody tells a lie about you or gives false information. What's different? It could be, if I can just finish my answer to Justice Sotomayor, because I just want to make clear, and I think the College Savings case is a perfect analogy here, that every cause of action does not confer a property right. The Court there made that clear, and that's why the property right rationale doesn't apply here. Now, turning back to Justice Kagan's question, I think there are other areas other than defamation where there's some guidance about what constitutes tangible harm. For example, in the false light cases, the Restatement has a comment that I think this is a Restatement seconded towards 652e, comment C, that's very on point. It says, ''Complete and perfect accuracy in published reports concerning any individual seldom attainable by any reasonable effort, and minor errors such as a wrong address or a mistake in the date of employment or similar unimportant details would not at the end'' Kagan These are not unimportant details. This is a great ''basically got everything wrong about him.'' You know, they got his marital status wrong, they got his income wrong, they got his education wrong. They basically portrayed a different person than the other. Pincus Well, Your Honor, your hypothetical, though, is any false statement, and I'm trying to respond to why a ruling by a rule by Congress of any false statement wouldn't qualify. So there are some legal precedents that tell us. Here's the thing, Mr. Pincus, it seems to me that the one thing that we have to say Congress is better at than we are, is identifying concrete harms. I mean, it's perfectly fine, and I agree with very large portions of your brief when you say they have to have identified a concrete harm, and it's like, fine, yes, they do. But now the question is, did they identify one? And it seems pretty clear what they wanted to do here, that this statute is entirely about preventing the dissemination of inaccurate information in credit reports, which they seem to think is both something that harms the individual personally and also harms larger systemic issues. And then they gave the cause of action to the people it harmed personally. And I guess, I mean, don't we owe them a little bit of respect that they've actually identified a real-world harm that's out there? Pincus, well, I think there's a threshold assumption in your question that Congress actually identified that as a real-world harm, and I think there are two problems with that. First of all, the structure of the statute indicates that that's not so. The willfulness cause of action that provides for statutory damages applies to every violation of the statute that's willful, including those that don't involve false statements. So by enacting — if the argument is, by enacting the willfulness cause of action, Congress said inaccuracy is so clearly harmful that it should be actionable in any case, it couldn't — it's just not possible to look at the way the statute was constructed and say that that was so. Alito How much more do you think the plaintiff in this case would have to allege or prove in order to show injury in fact? Pincus I think if the plaintiff could show that there was some consequence to him, some from the false information, something happened to his credit, something happened to an employment contract. Kagan But that's a really hard thing to do, Mr. Pincus, because people get these reports and you don't know what they're doing with these reports. They might have not given you a job for that reason, or they might have not given you a job for some other reason. They might have not given you credit for that reason, or they might have not given you credit for some other reason. I mean, it's actually the quintessential kind of injury that you will never be able to detect and surely not to prove. Pincus Well, Your Honor, I'm not sure that's so. I mean, I think defamation claims are exactly the same situation. People don't know necessarily if the statement is not defamation per se. People have to go out and find proof or at least find proof. Kennedy I suppose the argument underlying some of the questions you've been asked assumes  that it's not actionable unless it's defamation. On the Internet, in this cyber age that we have, where all this information is out, there has to be some real injury. Is it different because this is a credit agency that is regulated? Does a credit agency have less latitude when it is defending on the ground of no concrete injury than other entities? Pincus Well, I think there's a threshold question, Your Honor, of whether Congress made the determination that there should be a different treatment for credit agencies. And I think for the reason that I gave about how the willfulness claim came into the statute, it's hard to say. But I think also if you look at the ---- Kennedy But this statute applies just to crediting. That's what I was asking. Pincus It does, although one of the real world litigation problems with this statute is that lots of the claims are asserted against entities that claim they're not credit agencies, and that sort of, in the real world of litigation, falls out. It's not something that often gets decided before the class gets certified. But I think it's important to say ---- Ginsburg That's disputed in this case. Pincus Excuse me? Ginsburg It may have been disputed at an earlier stage, but now it's accepted that the defendant is a credit reporting agency. Pincus Well, it hasn't been ruled on by the lower court. So as the case comes to this Court, yes, that's the posture. But I think going back to Justice Kennedy's question, I think what Congress did here was to create a massive number of regulatory requirements that are imposed on credit reporting agencies. And all of those regulatory requirements together were supposed to produce accuracy. I think there can't be a ---- it's not logical to impute to Congress a finding that the violation of any one of those many, many, many requirements is actionable in the absence of reality. Sotomayor Isn't that, though, a question of the application of the statute? Pincus No, I think ---- Sotomayor And it doesn't invalidate the injury here, because this is the quintessential violation of the statute. He's saying they don't have reasonable procedures to check their accuracy. We know from the purpose section of the statute that that's what Congress wanted, reasonable procedures. He's going to have to prove that. Number two, he says, the information about me is false. I'm going to assume, for purposes of this argument, because we have to, that, and so does the Court below, with respect to standing, that much of that information is inaccurate. I will tell you that I know plenty of single people who look at whether someone who's proposed a date is married or not. So if you're not married and there's a report out there saying you are, that's a potential injury. Now, I know the Court below said it was speculative, but that's what Congress was worried about, both creditworthiness and your stature as a person, your privacy, your sense of self, that I can identify myself with some ---- others can identify me with some accuracy. Well, respectfully, I'm sorry. Sotomayor, I guess my question is, we've now taken a word, concreteness, that the Court in recent years has applied to injuries by citizens and when they can bring actions or not. A generalized grievance, we said, of a taxpayer is not concrete enough. We've taken this doctrine, and you're trying to superimpose the word concrete into legally created rights. But for two decades, I mean, two centuries, we've always said in our case law that injury, in fact, is the breach of a legally recognized right. Where do we have a right? I think that's Justice Kagan's question, to create another requirement. Respectfully, I don't think that the case is concrete. I think that the court has a right to say that. We discussed them in detail in our blue brief. I think what the Court said in Warth and Linda R.S. was about what the Court said in Lujan, which is de facto injuries as to which there is no cause of action can be made actionable when Congress creates a cause of action. That's quite different from saying that something that doesn't qualify under this Court's injury, in fact, standard as tangible harm can be made actionable, which is what the Ninth Circuit decided here. And I also want to also — Kagan. Well, I agree with you entirely on that. Go ahead. I just want to also sort of distinguish, in responding to your question, I think there are two questions. One question is, is a false statement, does a false statement by itself inflict tangible harm within the meaning of this Court's generally applicable injury in fact standard? If it does, it does. The Court has never said that, and we argue that it doesn't. The second question is, can Congress expand beyond where the Court has gone in defining things that should qualify a sufficient injury to trigger Article III jurisdiction? And we think there are two questions there. One is, has Congress in fact done that? And there's a question whether Congress has done that at all. And I think Justice Kennedy in his concurrence in Lujan said if Congress is going to do that, it should say clearly, because that obviously is a change in the jurisdiction of the Federal courts, and so Congress might be taken to the other side of the law. Kagan Congress does it by doing it, you know. Congress doesn't announce exactly where we are, we're just going beyond the common law. It just does it. And it does it, and it did it here. It said, you know, what are we concerned about? We're concerned about following the kinds of procedures that will make sure that there are accurate credit reports. And then Congress told you exactly why in the purposes section of the statute, and my gosh, it's all over the legislative history, the most serious problem in the credit reporting industry, Congress says, is the problem of inaccurate and misleading information. And so Congress has clearly done that here. And I guess I — if you want to explain to me why it is that Congress can't do — I think we've said that Congress can do that, can go beyond the common law, and certainly can go beyond anything that we've ever said is a concrete harm, as long as they've identified a concrete harm. Well, a couple of responses to that. If it's a concrete harm in the first place, of course, then they haven't really gone beyond this Court's test. I think — let me — No, concrete harms can arise in the world and can be identified in the world, even though they haven't arisen before or been identified before. But the Court's — I think the question, and I take the burden of my friend's argument to be that Congress can define things as sufficient to satisfy standing, even if they wouldn't, if they just were asserted in a court, satisfy the tangible harm requirement. So I guess to respond to your question and to my point. If he's saying that, I agree with you. Okay. Well, then — well, I think then the district court here held that that tangible harm requirement wasn't satisfied. Mr. Pincus, I would have thought that your answer to Justice Kagan would have been Congress did not identify as the harm for which it allowed suit to be brought misinformation. It did not. It identified as the harm the failure to follow the report — the procedures that it imposed upon credit reporting agencies. It said nothing about people who have been hurt by misinformation being able to sue. It said anybody can sue who's been reported on if the agency failed to use the procedure. So, in fact, Congress has not identified misinformation as a suable harm. That's not what this statute does. And I apologize if I haven't been clear. Isn't that your answer? That is exactly our argument. That Congress here created a remedy for any regulatory violation, and many, many, many— But why did Congress do that, Mr. Pincus? Congress did that as a safe harbor. We are not — it's a kind of industry-friendly act that Congress did. It said we're not going to punish any old inaccuracy. We're giving you a safe harbor. If — as long as you followed a certain set of procedures, don't worry about it. But that procedural requirement, this is — this is exactly what Lujan says. It's a procedural requirement, the disregard of which could impair a concrete interest of the plaintiff. And we distinguish that from procedural requirements in vacuo. And that's what this is. It's a procedural requirement, the disregard of which can impair your interest in being represented accurately in credit reports. Well, there are some problems with that, Your Honor. I mean, there are many of the — But, excuse me, that would lead to the conclusion that anybody can sue. Exactly. Not just somebody whose information was wrong. Because most of the — if I may, Your Honor, most of the statutory and regulatory requirements have nothing to do with falsity. They have to do with not following rules. There's nothing in the cause of action that says you can only sue for willfulness if the statement is false. It says, any willful violation of this entire regulatory statute. So the idea that Congress — Any person who willfully fails to comply with any requirement imposed upon this subchapter with respect to any consumer is liable to that consumer. So it's not the whole world, it's the consumer that you dealt with or that the agency dealt with. But, Your Honor, if the argument is that by enacting that, Congress meant to identify as a harm false statements, there's nothing that requires proof of a false or inaccurate statement in order to bring the claim. Well, but, Mr. Pincus, the gravamen of this claim, as I said, and as more importantly as the Respondent has said, is in 1681e, which does talk about accuracy, and it makes it clear that the procedures are linked to accuracy. And I totally take your point that, well, how about the person who — there's been no inaccuracy. Well, that person does not have standing. That person cannot come in and say that he suffered a concrete injury. But the person who has been inaccurately represented can come in and say he suffered exactly the concrete injury that this statute is designed to protect against. But, Your Honor, I don't see how you can say that a cause of action that says nothing about inaccuracy applies to a previously enacted — one of the many provisions of the statute to create, to say that Congress was focused on inaccuracy. Kennedy, are you saying in this case that Congress could have drafted a statute that would allow this individual to bring suit? I think Congress — yes, I think it might be possible, and let me explain how, Justice Kennedy. I think, first of all, to respond to one of Justice Kagan's earlier questions, I don't think it's crystal clear what Congress was doing here, because I think the most likely interpretation of this provision was it was enacted against the background of this Court's jurisprudence, which requires tangible harm. And what Congress was most likely saying was, we know that quantifying, monetizing that tangible harm in this context is hard, so if there's a willful violation, we're going to give you a minimum recovery. I think the reason why it makes sense to require Congress to speak clearly if it is going beyond what this Court has required for tangible harm is precisely because it is necessary to identify that Congress actually intends to give access to the Federal courts beyond that which would be true under this Court's otherwise applicable jurisdiction — rule. And it didn't do that here because of the willfulness layered on top of all of the statutory violations, and I think also the fair way of looking at this statute is as a complex of regulations which Congress thought, taken together, would improve accuracy. I don't think you can say that any single one of them, the violation of any single one of them, Congress thought was going to so likely to inflict injury on some person that they should be entitled to say. Scalia. Do all of them go to accuracy or some of them go to privacy and other matters? Most of them. One is about having an 800 number available. One has to do with notice to people who look at information. And that would be a violation, right, if you didn't provide that? Under — under. And presumably anybody, if you believe Respondent, anybody who — whose information is not accurate can sue to get the statutory damages for failure to provide an 800 number. Well, I think Respondent would say even if the information was accurate, you could sue to get statutory damages. I think Justice Kagan might limit it to people who are inaccurate. When we normally have a standing inquiry, there can be some people who have standing under a particular statute and some who don't. Is your position simply that you have to look at whether the plaintiffs have been injured in fact and that some plaintiffs will be able to proceed if they can make that showing and others may not? Absolutely, Mr. Chief Justice. That's our position. That's — and the district court held in this case, looking at the allegations of the complaint, that the court's injury in fact standard wasn't satisfied. The Ninth Circuit by the particular violation, injured in fact by the particular violation, not by failure to have an 800 number, you're saying. No, but would this man be able — I mean, this is very much in line with the Chief Justice's. Would he be able to sue based on the fact that there was inaccurate information about him? No, because the district court found that all of the allegations of all of his arguments about why there was any tangible harm to him were speculative and flunked this court's standard. Mr. Pinker. I guess what I understand — That's okay. Before you sit down, the brief suggests that the real danger of allowing this kind of action is that it will be brought on behalf of a class and you could get millions of plaintiffs and billions of dollars. If we should hold that Congress can give consumers a right to redress for false credit reporting, if we held that, would you have grounds to oppose certification of a class? Well, I think the problem here, Your Honor, is if you accept the broad theory that plaintiffs and the government espouse, which is all you have to show is a statutory violation, it's a pretty clear pathway to class certification because there's only common issues. And that's what has happened in case after case. Now, if falsity has to be proven, then obviously that is an individualized issue that might make it more difficult. I would like to reserve the balance of my time. Thank you, counsel. Mr. Consovoy. Mr. Chief Justice, and may it please the Court. Mr. Robbins has Article III standing for three independent reasons. First, the violation of the statutory rights under the Fair Credit Reporting Act constitutes injury in fact. Second, even if not, his entitlement to monetary relief as a consequence of that violation shows he has the personal stake that Article III requires. And third, the fact that his claim follows from the common law of defamation conclusively establishes that this is a case or controversy within the meaning of Article III. Kennedy, your number two, I mean, we can – it sounds to me quite circular. You say he has a personal stake because he has a – because Congress said he has a personal stake. Do I understand your argument? I view it just like a contract case. So if this were a contract instead of a statute, and the same duties and liabilities came to be, and it was a liquidated damages clause, he had a duty that was violated, he had an entitlement to money. The one thing the Court would not do in that case is look behind the entitlement to see whether he really was harmed in some other way than otherwise being owed the money. All Congress has to do is provide for damages, right? No, it has to do much more than that. It has to still create an interest, a discreet legal interest that's personal to him, that only – that is not a generalized grievance, that is not an undifferentiated harm, it has to do all of those same things. The point where we get to the – But that it is a harm. It is a harm. And you said it's a harm because he can't get the money that he was provided. But that's circular. So the violation of a legally vested interest at common law in this Court's decisions throughout has always been deemed a concrete harm. Going back to Tennessee Electric, where the Court narrowly used to say that a legal right was an injury. Then in Camp, the Court expanded beyond that to say, no, practical injuries, too, can be legal injuries. But it never negated the earlier, more difficult test. Roberts. What about a law that says you get a $10,000 statutory damages if a company publishes inaccurate information about you? You want – you have an unlisted phone number. You don't want people calling you. The company publishes your phone number, but it's wrong. That is inaccurate information about you, but you have no injury whatever. Can that person bring an action for that statutory damage? Congress has a lot of work to do there. I'm sorry? Congress has a great deal of work it needs to do to show. But can you have – do you have standing? Do you have injury in fact? When you don't want people calling you, the company publishes a false telephone number. Whether Congress has a lot of work or not, at the end of the day, can you recover those statutory damages? If Congress identified the interest of you receiving a phone call, and that's the injury, and you don't receive the phone call, you haven't suffered the injury Congress identified. No, no, no. I'm sorry. I'm sorry. Roberts, I realize we don't think companies should publish false information about you. Is it the end of the standing inquiry to say they published false information about me? Or do you have to ask, were you injured in some way by that publication? No. Congress has done its job there. So what would you say the injury in fact, not in law, but in fact, is in that case? So I don't think the contra distinction is between injury in fact and injury in law. A legally vested interest, whether it's created by Congress or created by the common law, is itself a concrete injury. But our cases have always said actual injury in fact, and I thought that meant that that was different than actual injury in law. You're saying when we say injury in fact, we really mean injury in fact or injury in law? No. I don't really think there is a term injury in law. I've not seen it in the cases. What I do see, going back to Camp, which is the first case that uses the phrase injury in fact, that concept was designed to get at two really important things. One, that the harm is not speculative, and not to play war games, but I think it means that you are in fact injured, as opposed to that you have actually been injured. And the second, that it's not a generalized grievance. Roberts, that's a very different question. I understand generalized grievance. You can't just say, even I think you gather, any citizen of the United States can sue about this. You have to particularize it to some extent. But that's a different question as to whether there's actual injury. So I think the Court uses the phrase concrete and particularized. That's two companion words, I think, getting at these same concepts. Now, two things have to happen. One, to show that it's a differentiated claim, that it's not a generalized grievance, you have to identify a subclass of people who are distinctly harmed other than the general population. That's the concrete part. That's what Schlesinger says. Scalia, I would think that's the particularized part. Roberts, the particularized part is that you are among those people. You need both things. Kennedy, but how in the Chief Justice's concrete part? Scalia, concrete has nothing to do with particularized. It means it is the only way to put it is an injury in fact. And I was going to say, the Lujan case says de facto, which is actual, existing in fact, having effect even though not formally or legally recognized. So, yes, and then the concurring opinion explained that it didn't – your concurring opinion, Your Honor – said that Congress could also play a role in that in identifying those injuries. And here it did. Breyer, this is my own view of this, maybe no one else's, but you sound as if we are describing a form of what used to be called the public action, of which there were no such examples in Federal law. Those States have them. And because you want people who aren't hurt, in fact, to be able to sit. And the example here is not just the Chief Justice's, which is one, but the more immediate example, which seems to be in this case, I didn't think it was, but it now seems to be, are people, perhaps not this plaintiff, but people who in fact notice that someone like the defendant has filed bad procedures leading to false information. And those people who were not injured bring a lawsuit, and they say, they are following bad information, that's it, bad procedure, and Congress gave me $100, so give it to me. Now, that's the person I didn't know was in this case, because this plaintiff seems to argue specific discrepancies in fact that in all likelihood hurt him, okay? But we are leaving him out of it. Now, I want to know what the government thinks of the case I've just put. Does the government think a person who admits nobody said anything wrong about me, they did say something about me, it was all correct. But they are using bad, bad practices for assembling consumer information. In the government's view, does the person in my hypothetical, similar to the Chief's, maybe identical, does he or does he not have standing, yes or no? Roberts, he responded to, he does not. Fine. If you say he does not, then we are limiting this case to the case of people who are victims of not just bad practices, but false information about them, and that's what the words with respect to any consumer mean. They mean any consumer who has obtained, who suffers from false information. If that's the government's position, then it's not a public action. It's a private action. That is Respondent's position. Sotomayorer, that's just a legal. Alito. In relation to that, can I just ask you something about, that goes to how Spokaio operates. Is there anything here to indicate that anybody other than Mr. Robbins ever did a search for him? Not in the record that I'm aware of. Then how can, then isn't that quintessential speculative harm? And my understanding, you correct me if I'm wrong. You don't have files someplace for every person in the United States, or you have databases, and you will do a search if somebody asks you to do a search. I assume you wouldn't say that somebody as to whom there never had been a search would have standing, right? Even if, you know, even if it would be the case that if there was a search, it would come up with a lot of false information. So for it to be a consumer report, there must be a communication to a third party. So we have alleged communications to third parties. At the pleading stage, that must be accepted as true at this point. But Spokaio, I believe on their website, does not share that information, who searched for you. And this is really important. It is almost impossible to know. If he applied for a job with a major employer in this country who had 5,000 job applicants and they pull his report, here is what Spokaio is selling. We are the arbiter of truth. If it says he went to College A on his resume and we tell you he went to College B, he is a liar. If he says he is 30 years old and we say he is 55 years old, he is a liar. That is their business. That is what they are selling. There is no way. Roberts I thought they had some disclaimer that Spokaio does not verify or evaluate each piece of data, makes no warranties or guarantees about any of the information offered. How is that saying if it's not accurate, you're a liar, he's a liar? Verrilli, and then it sells the – then it promotes its service, and this is in the FTC report and also in the complaint. To human resources executives saying if you want to run employee checks, come to us. It would be a strange business if they said come to us, but who knows if what we are telling you is true. And, and ‑‑ Scalia I think that's what the disclaimer is saying. Verrilli, but the disclaimer is that ‑‑ well, that is exactly what the disclaimer says, but of course Congress stepped into the breacher. Scalia You got to do the best you can, you know. Verrilli, I'm sorry? Scalia I say you got to do the best you can. Scalia You do. The person who hires somebody, if they all have this disclaimer, which I expect they all do, you either go without any information or you accept one of them. Verrilli, except Congress stepped in and said if you are operating as a consumer reporting agency, you have duties and responsibilities. Scalia I want to ask about what you think Congress did. You're saying it's limited to people about whom false information has been given. Suppose Congress enacts a statute that says everybody has a right to sue for exorbitant expenditures by the Department of Defense. This affects everybody. You know, the $900 toilet seat and so forth. Everybody can sue. That clearly would not be allowable. But suppose somebody is a disappointed bidder for the toilet seat and he sues under that statute and he said, oh, yes, the statute didn't just say that disappointed bidders can sue or that anybody who is proximately affected can sue. It said that everybody can sue. But I, in fact, have been proximately injured and therefore I ought to be able to sue. Do you think that would be true? Verrilli, likely not. Likely not. And here's why. Scalia Well, why is this case any different? You're saying only people who have been injured, assuming that false information  But the statute doesn't say that only they can sue. It says that everybody about whom Spuccoo did a report can sue. Verrilli, So it says this statute does things that the hypothetical statute does not. This statute says, starting with the cause of action, if you have done something that violates the statute with respect to a specific consumer, that consumer can sue you. Scalia Right. Verrilli, Then, second, then you look at the provision that we are basing the claim on here, the reasonable procedures provision. So that provision in particular, which is the only one before the Court, which is reasonable. Scalia So where do you get the necessity of injury in fact? Where do you get the necessity that there have been false information which you assert is there? Verrilli, So it says reasonable procedures to ensure maximum possible accuracy. Scalia Procedures to ensure maximum. That doesn't mean there has to be accuracy. Verrilli, No. Congress actually did something better for the industry. They gave them a limitation on liability. So Congress thought about giving strict liability here. And keep in mind, Justice Scalia, Congress preempted almost all State law claims here. They preempted State law defamation. So the notion that this isn't about defamation, when they preempted State law defamation, strikes me as a very difficult argument. So you are only in Federal court, and Congress said we could impose strict liability. Breyer Why don't you have to say, don't you, in answer to Justice Scalia, that the words follow reasonable procedures to assure maximum possible accuracy in respect to any consumer, the one who consumed, means that when you fail to do it in respect to a consumer, you say something false about that consumer. It doesn't use those words, and we would have to so construe it in order to save the constitutionality of the statute. Verrilli, And every lower court to reach this question has held that back. Scalia But that wouldn't be true. You could fail to follow the procedures and still come up with accurate information, like you could not have an 800 number. Verrilli, Correct. And that person would not have to say. Scalia It's impossible to read it that way, because it's simply not true. Verrilli, So, Justice Scalia, every lower court to reach this question has held that this particular provision requires falsity as an allegation, multiple courts of appeals. Roberts But I want to understand, I want to take the falsity out of the hypotheticals to get exactly what your position is on the breadth of Congress's power. So let's say the statute says anybody who's publishing information about you has to pay the individual $10 a year. They think that's a good way to regulate it. Information about you, good, bad or indifferent, pay them $10 a year. No more, no less. Spokio or whatever that business is pays you $20 one year. Now, you've been the statute has been violated with respect to you, a particular individual, and there's statutory damages of $10,000, can that individual sue? Does that individual have injury in fact because the statute has been violated with respect to him? Verrilli, I think no, because that statute would apply to everybody in the country. It would be no way. Spokio Oh, no, no, no. You have to have published information about an individual. Every individual who you publish information about gets $10 a year. Verrilli, So I think that would make it particularized but not concrete. So there'd be no standing, that person would have no standing even though Congress gave him standing. Spokio Congress can confer substantive rights that lead to standing. Verrilli, Yes. Spokio But not everything Congress does will confer a substantive right that differentiates you from the general public. Verrilli, So if the statute says $10, no more, no less, he gets $20, does he have standing to sue under that statute? I don't think so, because it would apply so broadly to everybody. Spokio No, no, no. You have to – I said this just before. They have to have published information about you. If they don't, they don't have to pay you anything. Verrilli, Right. And my answer is that that would make it particularized but not concrete. Sotomayor Is there always a materiality question? In every violation, there's always a materiality question. What is the falsehood? Is it material to anything? It could be a transposition of a telephone number. Verrilli, That's right. There is a de minimis aspect to the statute as well. But even – well, that is right. Even innocuous things can also cause real world harm. Kagan Mr. Pensivly, can I just make sure I understand? You said you need for the information to be inaccurate to have standing here. That is going to mean that the class as you've defined it is not going to be certified. And I think that that's the right answer, but I just wanted to make sure that we're on the same page here. Verrilli, Yes. So the class was – and this is going to come up later, this term in the Tyson case. But the class has to be defined as burly as it was because of what's called a fail-safe problem. You can't identify a class by an element of the cause of action. And that's because it harms defendant's rights. So if we had alleged the class here was everybody who had inaccurate information, it would be a trick against them, because if they defeated the claim, the class would be empty and they would get no res judicata. So at certification, we're going to have to narrow the class and we're going to have to come up with common proof, because we can't identify the class by the allegation. So what happens is, take the algorithm issue. So we will have to allege under B-3, 23B-3, that a common algorithm led to all the inaccuracies. But if they do, that is a certifiable class. And just – And one very quick thing. You said in your brief you're really only suing under 1681eb. Mm-hmm. Can I understand that to be that you're waiving all claims of other things? No. I think – let me explain. We read the statute this way. There's a reasonable procedures requirement. That is a general framework. Some of that is discussed in the regulatory commentary, explains what that is. But the specific things mentioned in count 1, count 2, and count 3, the furnisher notices, the user notices, and the toll-free number, are specific examples of reasonable procedures they failed to follow. They support the general claim. Are you saying you get the statutory damages for the four claims that you listed, or is it only what you've called the overarching claim? And then in one footnote, you said these other claims are just supportive of the main claim. So are you asking for four times the statutory damages, or are you saying, no, this is really one claim, and so we're asking for $100 a head or $1,000 a head? It's one claim. It's one claim. Yes, Your Honor. Now, these are big-picture questions, but this case can be resolved on a much narrower issue. This Court has always held that if the cause of action you allege can be found in the common law and is developed from the common law, as in Stevens, that you have to have a clear understanding, this claim for false information follows directly from the common law of defamation. Roberts, The Ninth Circuit didn't address that question, did it? I mean, as I understand it, I'm looking at the footnote, you know, on page 9a. It says it doesn't matter because the statutory injury in law is enough. Right. No, well, but the statute follows from defamation, just as in Stevens. It was about the statute. It wasn't about the particular individual. They said the Keat-Tam statute followed from the common law there, just like this statute follows from the common law of defamation. And remember, in the case of Stevens, it was about the statutory injury in law, just as in Stevens. Scalia, I mean, you could not bring a defamation action because somebody said something false about you. It was either in one of those areas where it is presumed to be damaging, you know, such as it's, you know, about your moral life or something like that, or your incompetence in your profession, or else you had to show positive damage. How can you say that it's closed in that common law? So in Steel Company, Your Honor, the Court said it must be in the tradition of the common law of the sort, not precisely replicated. Oh, I see. Okay. Not precisely replicated. Close enough. Okay. Roberts. Thank you, counsel. Mr. Stewart. Mr. Chief Justice, and may it please the Court, in Defenders of Wildlife, the Court gave the following description of what injury in fact means.  And so the injury part of it was the invasion of a legally protected injury or interest. And I think it's clear what work the words in fact are doing in that description. If Mr. Robbins had alleged that Spokio is circulating a lot of inaccurate consumer reports and I'm afraid they'll do one about me, that wouldn't be good enough. What happened to concrete and particular, Roberts? Well, particular, I think we say that in, gee, a whole lot of cases. It didn't appear in that quote you gave? It did. It's actual or imminent, well, concrete and particularized and actual or imminent, not conjectural or hypothetical. And the Court has explained both the terms concrete and particularized as aspects of the requirement that the wrong be done to the particular plaintiff, not that it be done to the community as a whole. And the Court used the terms that way in Schlesinger. I don't know. Mr. Stewart, let's say you're ‑‑ Congress thinks that the President is not doing enough to stop illegal immigration. So it passes a law that says anyone in a border State, so it's particularized, who is unemployed may bring an action against an illegal immigrant who has a job. And they get damages, maybe they get an injunction. Can Congress do that? Well, I think there would be a couple of different problems with that. The first would be that there may be some ‑‑ there may be some legal issues that Congress can't simply delegate to private enforcement, that are like the criminal law, for instance. There would be constitutional, potential constitutional— Roberts' I think that's kind of avoiding the hypothetical. I mean, let's— Presumably you would raise those issues after the action has been filed and, you know, you could raise those issues as an amicus defending the action. I mean, I think that would ‑‑ typically when Congress has done this, and in all the common law analogs that we've cited, that the class of people who could file suit would be people whom the prohibited conduct had a natural tendency to harm. Yeah. We're talking about Congress says, well, these people who are unemployed, illegal immigrants, have jobs, they should be able to sue to stop that, because, you know, because Congress thinks the President isn't doing enough. I mean, I think it would be ‑‑ I think that would stretch the limits of Congress's power to treat those ‑‑ that broad class of individuals as victims of all acts of illegal immigration. And obviously the statute in ‑‑ that we're dealing with here doesn't come anywhere close to that. And I understand the Court's concerns with the implications of our position, but I think it's also worth pointing out this is a mode of enforcement that Congress has been using since 1790. In the first Copyright Act, Congress enacted a provision that said if there's infringement, the copyright owner can get actual damages if he can prove them, or failing that ‑‑ Roberts. You know the objection behind my hypothetical, which is Congress can say basically to a group of citizens, you get to enforce one of our laws because we're giving you a cause of action. It doesn't matter whether you've actually been injured or not. We just have to particularize it to some extent. And I would have thought that the President would be concerned about Congress being able to create its own enforcement mechanism. I thought that you would be concerned that that would interfere with the executive's prerogatives. Stewart. I think when we get to the point of the hypothetical where any unemployed person in the State is treated as the legal victim of every act of unlawful immigration that occurs in that State, we do have concerns. But the statute we're dealing with here says ‑‑ The statute we're dealing with here treats everybody about whom false information has been given as somebody about whom false information that harms him has been given. I mean, the class is not ‑‑ is not coextensive with those ‑‑ those that are harmed. And it's the same ‑‑ it's the same in the Chief Justice's hypothetical. The class is not coextensive with everybody who's been ‑‑ who has been cheated out of a job by an unlawful immigrant. Well, again, leaving aside the potential ‑‑ the possibility that immigration is something that can't be dealt with by private suits, if there was some particularized connection required, if the person could show that he applied for the job that the illegal immigrant received, that would be a much different sort of statute. Here, the statute we're dealing with doesn't say ‑‑ In the community ‑‑ in the Board of States is not proximate enough for you. Let's just say anybody who is unemployed in the community where there is an illegal immigrant can sue. I think that's still probably too ‑‑ too broad a class. And I understand the allure of the hypotheticals, but you could do the same thing with rational basis review of substantive legislation. You could come up with endless hypotheticals about statutes that were just at the border between really stupid and so stupid as to be actually irrational. Roberts Well, the difference is that this is dealing with the requirement of a case or controversy which has always been recognized as at the core of Article III jurisdiction. And we have a legion of cases that say you have to have actual injury. That's what makes it a decision appropriate for resolution by the judicial branch. And it seems a little bit more important than saying you can challenge particular statutes. Well, the point is ‑‑ I was trying to make was that Congress has been doing this since 1790, and nobody has pointed to a statute that comes close to the hypotheticals. But to return to the point about injury in fact, the Court has said there has to be actual injury, but it has defined injury as the invasion of a legally protected interest, the violation of a legal right. The most recent edition of Black's Law Dictionary gives, as its first definition of injury, the violation of another's legal right for which the law provides a remedy. Scalia. But we've also said that violation of a procedure, even if you are given a right to the procedure, that alone does not suffice for standing. That is a procedure ‑‑ that is a procedure in vacuo that leads to nothing. We've said that. So there has to be something more than just the violation of what the Congress says is a legal right. That is not enough. And the Court has also said that Congress can't give every citizen an entitlement to sue simply by calling it a legal right. But with respect to procedures, the Court has said you can sue to complain about the deprivation of lawfully required procedures if those procedures are intended to protect a country. Breyer. Right here we have in the complaint, I guess, there were certain errors. A photograph of the wrong person, a statement that he's in his 50s, he isn't, that he's married, he isn't, he's employed in a professional or technical field, he isn't, that he has children, he doesn't, that he has a graduate degree, he doesn't, that his economic health is very strong, it isn't, and his wealth level is in the top 10 percent, it isn't. Okay? So that, I gather, is what he is complaining about. Something like it. Fine. Now, for purposes of deciding this case, are we simply to refer to this and say this is a case about a person who is complaining this, and is this, which I just listed, a sufficiently concrete injury? Yes, absolutely. And I ‑‑ Roberts. And that's not what the Ninth Circuit based its decision on. The Ninth Circuit says he has standing by virtue of the alleged violations of his statutory rights, without respect to whether there was harm to his employment process or related anxiety. So I would suppose if we're going to decide it on that basis, we have to determine that the Ninth Circuit's rationale was in ‑‑ was wrong. I'm sorry I don't have the exact wording in front of me, but if you look at the very first sentence of the Ninth Circuit's opinion, the Ninth Circuit says the question we confront is whether a person has injury in fact when false information about him is disseminated. Now, the court said we don't have to decide what is added to the complaint by the allegations that employment prospects were actually harmed. And it's also true that the Ninth Circuit didn't analyze the question that it framed in quite the way we would have. It didn't rely on the defamation analogy. It relied on the statutory right. But it still described the question before it as whether a person has injury to complain about. Kagan. And, Mr. Stewart, if I could just ‑‑ I mean, the ‑‑ maybe this is the sentence that you're talking about. At one point the court says the interests protected by the statutory rights at issue are sufficiently concrete and particularized. Now, look, it's not a good opinion, and then it doesn't tell you why it is that they're sufficiently concrete. But they clearly held that they were sufficiently concrete. They understood that as part of the test. Stewart. The other point I would make ‑‑ I agree with that. And the other point I would make about Defenders of Wildlife is the statute at issue in that case said any person can sue to complain about particular types of Endangered Species Act violations. And the court said that's just too broad. Congress can't do that. But it didn't say, therefore, the authorization to sue is a nullity and we don't have to worry about whether this plaintiff has standing to sue. It analyzed in depth the allegations and the evidence that the particular plaintiffs and defenders of wildlife had put forward and said this is insufficient. And then later in Bennett v. Speer, the court applied the same Endangered Species Act provision at the behest of a plaintiff who did have standing. So it isn't the case that if Congress fails to draw exactly the right line, people who would have been within the right line are out of luck. I think the allegations of the complaint are the important thing to focus on. With respect to the defamation analogy, I'd say Congress in one sense is broader than common law and in another sense it's narrower. It's broader in that the statute certainly sweeps in categories of types of falsehoods that wouldn't have been defamation per se at common law. On the other hand, it applies only to consumer reports, documents that are intended to be used for concrete, primarily economic purposes. Thank you. Roberts' Thank you, counsel. Mr. Pincus, you have three minutes remaining. Pincus Thank you, Mr. Chief Justice. Justice Kagan asked a question earlier about how could people find this. You know, our legal system is people have to have allegations that they're harmed. And I'd urge the Court to look at the public justice amicus brief on the other side of the case for a whole series of claims in which the people filed and they were able to make allegations of actual harm. The argument that the Ninth Circuit relied on falsity is a fiction. The first sentence, the overture of its opinion, mentions that there's an allegation of falsity. There is not a word in its standing analysis that refers at all to falsity. It relied on statutory violations, period, including the violations that say nothing about falsity. Sotomayor Are we ruling on the outcome or are we ruling on the reasoning? Pincus Well, Your Honor, I think as the Court comes to the question presented was, does the Ninth Circuit's rule that a mere statutory violation unaccompanied by any harm is sufficient to satisfy Article III? I think the Court has to address that issue. The next issue is, did Congress elevate, did Congress say that false statements inflict a certain kind of harm and therefore we're going to single them out? And I think to rely on Congress, Congress actually has to have made that determination. And there is nothing in the statute that says that. As Justice Breyer said, you have to actually read falsity into the statute in order to find falsity. Congress didn't say anything about the particular harm inflicted by false statements. If it wanted to do that, it should. Sotomayor See, I look at this case slightly differently. I think the breach of any legal right you're given gives Article III jurisdiction. There's a difference between that and whether you're within the zone of interest of a statute. And so what you're saying, I guess that's why the circuits below have said you have to be able to allege some falsity in the credit report to get recovery under the statute because those are the people the statute was targeted to. Your Honor, that's not right. All of the decisions that my friends referred to were decisions not where there were willfulness claims, but where there were actual damages claims. No surprise that the courts have said to prove actual damages, you have to at least show falsity. There has been no decision interpreting the statute in the context of a willfulness claim to say whether it does. And I think the problem with the position on the other side is they want to say Congress made this decision that anything inaccurate is harmful, but there's nothing in the statute to say that. Congress should speak clearly if it wants to do that. And then this Court has to review that determination. And I think the question would be, is the class defined by Congress sufficiently congruent with tangible harm to satisfy Article III? And I think here the class of all inaccuracies can't possibly be a class of people, most of whom are going to suffer actual harm. Ginsburg. We have one brief, the brief of the restitution scholars, who say if this Court says that you have to show some harm, what happens to all the restitution cases where you measure the relief by the gain to the defendant, there has been no loss to the plaintiff? Your Honor, restitution is all about a measure of damages. In all those cases, often they're breach-of-contract cases, there's harm. The property interest conferred by the contract has been violated, and the question is a measure of damages. In the fiduciary duty context, as in the property case. Ginsburg. So what is the harm, the neighbor who puts a toe into the neighbor's land? It is the intrusion on the right to exclude the property interest created by the common law, and this statute doesn't create a property interest, so it can't be upheld on this basis. Thank you, counsel. The case is submitted.